Citation Nr: 1452688 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 10-27 914 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to an initial rating in excess of 10 percent for prostate cancer. 


REPRESENTATION

Appellant represented by: National Association of County Veterans Service Officers


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

K. Haddock, Counsel 

INTRODUCTION

The Veteran had active military service from March 1967 to February 1970. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. Jurisdiction over the case was subsequently returned to the VA RO in Newark, New Jersey. 

In connection with this appeal, the Veteran testified at a hearing before the undersigned Veterans Law Judge at the RO in September 2011. A transcript of that hearing has been associated with the claims file. 

This case was previously before the Board, most recently in July 2014, at which time the issue currently before the Board was remanded for additional development. The case has now been returned to the Board for further appellate action.


FINDING OF FACT

The Veteran's prostate cancer residuals are manifested by voiding dysfunction with daytime voiding intervals of 3-4 hours, 1-2 hours when operating heavy equipment, and he awoke two times per night to urinate.


CONCLUSION OF LAW

The criteria for an initial rating in excess of 10 percent for prostate cancer have not been met or approximated. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.7, 4.115b, Diagnostic Code 7528 (2014). 




REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

VA will assist a claimant in obtaining evidence necessary to substantiate a claim, but is not required to provide assistance to a claimant if there is no reasonable possibility that assistance would aid in substantiating the claim. VA must also notify the claimant of any information, and any medical or lay evidence, not previously provided to VA that is necessary to substantiate the claim. 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2014); 38 C.F.R. § 3.159 (2014). As part of the notice, VA must specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant.

Notice to a claimant should be provided at the time or immediately after, VA receives a complete or substantially complete application for benefits. 38 U.S.C.A. § 5103(a) (West 2002); Pelegrini v. Principi, 18 Vet. App. 112, (2004). The timing requirement applies equally to the effective date element of a service connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Board finds that the Veteran was provided adequate notice in response to his claim. The record shows that the Veteran was mailed a letter in May 2009 advising him of what the evidence must show and of the respective duties of VA and the claimant in obtaining evidence. The May 2009 letter also provided the Veteran with appropriate notice with respect to the disability rating and effective date elements of his claims. 

The Board also finds the Veteran has been afforded adequate assistance in response to his claim. The Veteran's service treatment records (STRs) are of record. VA Medical Center and private treatment notes have been obtained. The Veteran has been provided appropriate VA examinations. Neither the Veteran nor his representative has identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claims. The Board is also unaware of any outstanding evidence. 

Legal Criteria

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2014). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (2014). 

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board has reviewed all evidence of record pertaining to the history of the service-connected disabilities. The Board finds nothing in the record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. 38 C.F.R. §§ 4.1, 4.2, 4.41, 4.42; Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Prostate cancer is rated under 38 C.F.R. § 4.115b, Diagnostic Code 7528, which provides for a 100 percent rating for malignant neoplasms of the genitourinary system. Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e). If there has been no local reoccurrence or metastasis, the disability is to be rated on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.

The Veteran has not been shown to have renal dysfunction and so, his prostate cancer residuals have been appropriately rated based on reported symptoms of voiding dysfunction. Voiding dysfunction is to be rated as urine leakage, frequency, or obstructed voiding. 38 C.F.R. § 4.115a. 

For continual urine leakage, post-surgical urinary diversion, urinary incontinence, or stress incontinence; a 20 percent rating is warranted when there is voiding dysfunction that requires the wearing of absorbent materials that must be changed less than two times per day. A 40 percent rating is warranted when there is voiding dysfunction that requires the wearing of absorbent materials that must be changed two to four times per day. A 60 percent rating is warranted when there is voiding dysfunction that requires the use of an appliance or the wearing of absorbent materials that must be changed more than four times per day. 38 C.F.R. § 4.115a. 

For urinary frequency, a 10 percent rating is warranted when there is a daytime voiding interval between two and three hours, or; awakening to void two times per night. A 20 percent rating is warranted when there is a daytime voiding interval between one and two hours, or; awakening to void three to four times per night. A 40 percent rating is warranted when there is a daytime voiding interval of less than one hour, or; awakening to void five or more times per night. 38 C.F.R. § 4.115a. 

Obstructed voiding warrants a maximum schedular rating of 30 percent for urinary retention requiring intermittent or continuous catheterization. A 10 percent rating is warranted for less severe symptoms. 38 C.F.R. § 4.115a.

With an approximate balance of positive and negative evidence as to any issue material to the determination of a matter, VA resolves reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

Analysis

At an August 2009 VA examination, the Veteran reported that prior to radiation treatment, he had experienced symptoms of a slow stream, but that the symptoms had improved somewhat since radiation treatment. The Veteran reported that he would awaken approximately two times per night to urinate, but that his nocturia was fluid dependent and he reduced his fluids at 6 pm to prevent nocturia. The Veteran reported that he drank eight glasses of water per day and that his daytime frequency was every 3-4 hours when he was not running heavy equipment. He reported that when he was running heavy equipment, he had urinary frequency of every 1-2 hours. The Veteran did not have a history of infections or incontinence and did not wear protection. Upon physical examination, the Veteran's prostate was flat and smooth. 

At a March 2014 VA examination, the Veteran reported that his daytime voiding interval was every 2-3 hours. He denied urine leakage, obstructed voiding, and the use of an appliance. The Veteran reported that he awakened two times per night to urinate. The Veteran denied a history of recurrent urinary tract or kidney infections. There were no other residuals or complications from the Veteran's prostate cancer identified by the examiner. The examiner confirmed the diagnosis of prostate cancer and noted that it was in remission. 

A review of the record shows that the Veteran receives sporadic urology treatment at the VA Medical Center. A review of the VA Medical Center treatment notes of record shows that he has reported nocturia 1-2 times per night and reported that the nocturia was fluid dependent so, he limited his fluids after 6 pm. The Veteran has also reported urinary frequency of every 3-4 hours when not operating heavy equipment and every 1-2 hours when operating heavy equipment. 

A review of the record shows that the Veteran also receives periodic treatment from a private urologist for his prostate cancer residuals. In a July 2009 treatment note, it was noted that the Veteran had no urinary symptoms at all. In a November 2009 treatment note, it was noted that the Veteran's urinary stream was normal and that he had occasional nocturia. In a May 2010 treatment note, it was noted that the Veteran had no nocturia and his prostate was smooth, soft, and flat upon physical examination. In a May 2011 treatment note, it was noted that the Veteran had nocturia up to one time per night. In a November 2011 treatment note, it was noted that the Veteran had nocturia two times per night. In a November 2012 treatment note, it was reported that the Veteran's urination was fine with only occasional nocturia. In a November 2013 treatment note, it was reported that the Veteran had nocturne up to only one time per night, that he had no hesitancy and only occasional urgency. 

At his September 2011 Board hearing, the Veteran reported that he had a daytime frequency of approximately every 2.5 hours and that he had nocturia two times per night. The Veteran reported that on occasion he had some slight discharge, but that the discharge would clear up with antibiotics. 

The Board finds that the Veteran is not entitled to an initial rating in excess of 10 percent for the residuals of his prostate cancer. In this regard, the Board notes that there is no evidence of record indicating that the Veteran had voiding dysfunction that required the wearing of absorbent materials that must be changed 2-4 times per day, daytime voiding interval between 1-2 hours, nocturia 3-4 times per night, or that he had urinary retention requiring intermittent or continuous catheterization. In fact, the Veteran has consistently reported that he does not wear absorbent pads, he had nocturia up to two times per night, and that most of the time his urinary frequency is every 3-4 hours. The Veteran only has a daytime interval of 1-2 hours when operating heavy equipment and the evidence fails to show that those duties take up a significant portion of his day. Further, the evidence does not show that the Veteran has any sort of urinary retension or that he requires the use of a catheter. Therefore, the Board finds that a rating in excess of 10 percent is simply not warranted at this time. 38 C.F.R. § 4.115, Diagnostic Code 7528.

Consideration has been given to assigning a staged rating. However, at no time during the period in question has the disability warranted a higher schedular rating than that assigned. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extra-schedular consideration. 38 C.F.R. § 3.321(b)(1) (2014). The threshold factor for extra-schedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008).

In the case at hand, the record shows that the manifestations of the disability are contemplated by the schedular criteria. There is no indication that the average industrial impairment from the Veteran's prostate cancer is in excess of that contemplated by the assigned rating. A higher rating is available for more severe levels of impairment, but the Veteran does not meet the criteria for a higher rating. The evidence does not show frequent hospitalizations or marked interference with employment beyond that anticipated by the assigned rating. Therefore, the Board finds that referral for extra-schedular consideration is not in order.


ORDER

Entitlement to an initial rating in excess of 10 percent for prostate cancer is denied.


____________________________________________
D.C. Spickler
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs