Citation Nr: 1744026 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 17-25 802 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma


THE ISSUE

Entitlement to compensation under 38 U.S.C.A. § 1151 for transient ischemic attack (TIA). 


REPRESENTATION

Appellant represented by: Oklahoma Department of Veterans Affairs


ATTORNEY FOR THE BOARD

E. Morgan, Associate Counsel



INTRODUCTION

The Veteran had active duty service from August 1950 to June 1954.

The appeal comes before the Board of Veterans' Appeals (Board) from a December 2016 rating decision from the VARO in Muskogee, Oklahoma.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The Veteran's TIA was not proximately caused or aggravated by carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, nor by an event not reasonably foreseeable.


CONCLUSION OF LAW

The criteria for compensation under 38 U.S.C.A. § 1151 for a TIA have not been met. 38 U.S.C.A. §§ 1151, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.361 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran is seeking compensation under 38 U.S.C.A. § 1151 asserting that prescribed medications for hypertension caused him to have a TIA. In October 2016 on his VA Form 21-4138, he asserted that VA was at fault for continuing blood pressure medication resulting in low blood pressure causing his TIA. In his Notice of Disagreement (NOD) he asserted that VA developed evidence to deny his claim because the VA Disability Benefits Questionnaire examiner cited studies which show diabetes is a risk factor for TIA and "the veteran is not being treated for diabetes." 

If a veteran receives treatment by or through VA and sustains disability in addition to that for which she was being treated, VA compensation may be awarded as if the additional disability was service-connected. 38 U.S.C.A. § 1151. To be awarded compensation under section 1151, a claimant must show that VA treatment (or other qualifying event) resulted in additional disability, and further, that the proximate cause of the additional disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing the medical or surgical treatment, or that the proximate cause of the disability was an event which was not reasonably foreseeable. 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361. 

To determine whether additional disability exists, the claimant's physical condition immediately prior to the beginning of the hospital care, medical or surgical treatment, or other relevant incident in which the claimed disease or injury was sustained upon which the claim is based, is compared to the claimant's condition after such treatment, examination or program has stopped. 38 C.F.R. § 3.361(b).

Provided that additional disability exists, the next consideration is whether the causation requirements for a valid claim for benefits have been met, to consist of both actual and proximate causation. In order to establish actual causation, the evidence must show that the medical or surgical treatment rendered resulted in the additional disability. If it is shown merely that a claimant received medical care or treatment, and has an additional disability, that in and of itself would not demonstrate actual causation. 38 C.F.R. § 3.361(c)(1). 

The proximate cause of the disability claimed must be the event that directly caused it, as distinguished from a remote contributing cause. To establish that carelessness, negligence, lack of proper skill, error in judgment or other instance of fault proximately caused the additional disability, it must be shown that VA failed to exercise the degree of care expected by a reasonable treatment provider, or furnished the treatment at issue without informed consent. 38 C.F.R. § 3.361(d)(1). 

Proximate cause may also be established where the additional disability was an event not reasonably foreseeable, based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable, but must be one that a reasonable medical provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider the type of risk that a reasonable health care provider would have disclosed as part of the procedures for informed consent (in accordance with 38 C.F.R. § 17.32). 38 C.F.R. § 3.361(d)(2).

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

In this case, VA treatment records show that the Veteran was diagnosed with diabetes on May 8, 2004. An August 2009 VA treatment note shows that the Veteran's glucose was getting higher and he was started on Metformin at 250 mg. A December 2010 VA treatment note shows that the Veteran was taking Metformin 250 mg twice a day for diabetes. An April 2016 VA treatment note shows that the Veteran met with Diabetology Management and his diabetes was controlled with diet. 

An April 25, 2016 VA neurologist's note shows that the Veteran sought treatment for dizziness. His blood pressure was low and his hypertension medication was reduced. The VA physician's impression was that the Veteran's dizziness was due to a "combination of brainstem lacunar infract due to CVA and vertebrobasilar artery insufficiency, dizziness partly due to relative hypotension due to excessive antihypertensive medications, CLBP and small vessel cerebrovascular disease with multiple lacunar infract in right parietal area, left internal capsule and right cerebellum." He also reported that the Veteran "is still not taking BP meds properly and may be overdosing on BP meds." 

In May 2016 a private urgent care clinical note shows that the Veteran reported dizziness for one year. He reported to the private treating physician that he was told that he had mini strokes and his BP meds were the problem and that he needed to lower BP meds so the blood circulation gets to his brain. 

In December 2016 a VA Disability Benefits Questionnaire (DBQ) examiner reviewed the medical evidence in the claims file and recounted the Veteran's history. The examiner was asked to provide an opinion as to whether the claimed disability of TIA was caused by or became worse as a result of the VA treatment at issue. She reviewed the Veteran's blood pressure readings for the last 14 years which did not show dangerously low levels. She reported it would be very difficult to assign blame to a healthcare practitioner for causing strokes or TIA's based upon blood pressure medication doses for the following reasons: 

1. It is noted that the patient was possibly not taking the medication as prescribed.

2. The patient is at an increased risk of having TIA's and strokes because of his underlying illnesses of HTN and DM.

3. The available blood pressure readings appear to be well-controlled, which is preferable for risk factor reduction in patients with HTN.

4. The cause of the patient's dizziness is not known. It is not clearly linked to the patient's blood pressure readings and/or TIA's or strokes.

5. Blood pressure levels which cause symptoms (if any) varies greatly from patient to patient. 

The DBQ examiner reported that "taking all of the above into consideration it is less likely than not that the disability of transient ischemic attack (TIA) was caused by or became worse as a result of the VA treatment at issue." She cited to three medical studies in support of her findings: Long-term risk factors for stroke: twenty-eight years of follow-up of 7457 middle-aged men in Göteborg, Sweden by Harmsen P, Lappas G, Rosengren A, Wilhelmsen L. Stroke. 2006;37(7):1663; Diabetes, hyperglycaemia, and acute ischaemic stroke by Luitse MJ, Biessels GJ, Rutten GE, Kappelle LJ. Lancet Neurol. 2012 Mar; 11(3):261-71; and Diabetes as a risk factor for stroke in women compared with men: a systematic review and meta-analysis of 64 cohorts, including 775,385 individuals and 12,539 strokes by Peters SA, Huxley RR, Woodward M Lancet. 2014 Jun;383(9933):1973-80. Epub 2014 Mar 7.

Based upon a thorough review of the entire medical evidence of record, the Board finds that the Veteran did not incur an additional disability as a result of VA medical care. Under 38 C.F.R. § 3.361 the Veteran must establish that his TIA was an additional disability proximately caused by VA medical treatment and that VA failed to exercise the degree of care that would be expected of a reasonable health care provider. Here, the evidence does not establish that the Veteran has an additional disability proximately caused by VA health care providers prescribing medication for hypertension and that a reasonable healthcare provider would have foreseen that prescribing antihypertensive medication to a patient with hypertension would directly result in a TIA. 

The VA DBQ examiner reviewed 14 years of the Veteran's blood pressure readings. She reported that the Veteran's high blood-pressure was well controlled as a result of medication from the VA. She also reported that he was at increased risk for a TIA or stroke because of his underlying hypertension and diabetes mellitus. The Board finds the DBQ medical evidence competent and persuasive. The Board adopts the medical findings therein as they are supported by a thorough of the Veteran's medical history and medical research. The examiner also reported that a reasonable healthcare provider could not have reasonably foreseen that prescribing antihypertensive medication to a patient with HTN would cause a TIA. The Veteran was on antihypertensive medication for more than a decade. If the antihypertensive medication was the proximate cause of his TIA, he more likely than not would have had a TIA immediately following being prescribed the medication. Further, he was prescribed the antihypertensive medication to lower his blood pressure which was the effect achieved. The Board finds that the Veteran's TIA is not an additional disability proximately caused by VA healthcare providers prescribing antihypertensive medication to a patient with hypertension.

VA treatment records show that the Veteran had two underlying health issues. The Veteran was diagnosed with diabetes mellitus in May 2004. He was prescribed Metformin 250 mg. He has met with VA regularly to ensure that his diabetes is controlled with his diet after it was stabilized with medication. The Veteran's hypertension was controlled with medication however, he was not taking his hypertension medication properly according to his VA neurologist. 

As there is no evidence of proximate cause between VA prescribing the Veteran medication for hypertension and the Veteran's TIA; and there is no evidence that VA healthcare providers lacked the degree of reasonable care expected, the claim is denied. The Board notes that there is no issue regarding informed consent in this under 38 C.F.R. § 17.32(d). 

In sum, as the Veteran's TIA was not proximately due to VA treatment, the preponderance of the evidence is against any relationship of causation or aggravation between the Veteran being prescribed medication for hypertension, or any other VA treatment, and his TIA. Accordingly, the Board concludes that entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for his TIA is not warranted. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, required notice was provided by a letter dated in January 2017. See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). 

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records and post-service medical records have been obtained. The Veteran asked to have this DBQ examination rescheduled for Muskogee or Tulsa. However, as the alleged incident took place in Muskogee VA Medical Center/Tulsa Outpatient Clinic the DBQ could not be rescheduled for that facility. To avoid a possible conflict of interest the DBQ was not rescheduled at the same facility. See, M21-1, Part III, Subpart iv, Chapter 3, Section A(7)(g). VA provided a medical opinion in December 2016 regarding this claim submitted in October 2016. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the December 2016 VA DBQ medical opinion and findings obtained therein in this case to be adequate. The VA DBQ opinion considered all the pertinent evidence of record, and provided a complete rationale for the opinion stated. 

Therefore, VA has satisfied its duties to notify and assist, additional development efforts would serve no useful purpose, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


ORDER

Entitlement to compensation benefits pursuant to the provisions of 38 U.S.C.A. 
§ 1151 for a TIA is denied




____________________________________________
LESLEY A. REIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs